WILT et al. v. GRAHAM et al.

*Appeal from Tama District Court — Wednesday, March 27.*

CONTRACT: LAND AGENT.

ACTION IN CHANCERY. The petition, as a cause of action, sets out that plaintiffs, who were residents of the State of Pennsylvania, owned

a section of land in Tama county, and that defendants, who were land agents residing in the same county, were the agents of plaintiffs for the payment of taxes upon and for the sale of said land. In February, 1868, defendants represented to plaintiffs that they had sold the land to certain parties for the sum of $3,840, receiving a small part of the purchase-money, and requesting plaintiffs to execute a deed therefor to defendant, Graham, assigning motives of convenience for having the deed executed to him.

The deed was executed by plaintiffs to Graham, who conveyed the land to the party to whom defendants had sold it for plaintiffs. The defendants received from this party $4,480, and accounted to plaintiffs for the sum of $3,840, representing to them that they had received that sum and no more. These acts and dealings are charged by plaintiffs to be fraudulent as against them, and they ask that an accounting be had between plaintiffs and defendants, and for judgment for the amount received by defendants over and above the sum of $3,840, together with interest, and for general relief. The defendants deny that they were plaintiffs' agents — deny the fraud charged against them and aver that they purchased from plaintiffs the land for themselves, which was well understood before and after the sale of the lands. The district court rendered a judgment against defendants for $750 and costs. They appeal to this court. All of the evidence, upon which the cause was tried in the court below, is found in the record, and the cause was heard *de novo* in this court.

*C. B. Bradshaw, Conklin & St. Clair* for the appellants — *Stivers & Safely* for the appellees.

BECK, Ch. J. — No other questions than those of facts are presented for our determination in this case. The questions of law involved in its determination are undisputed and elementary. The whole case turns upon the single question: Were defendants the agents of plaintiffs in the sale of the lands? If they were, they must be required to account to plaintiffs for the full amount they received for it. It will not be for a moment disputed that one intrusted with the sale of property, as the agent of the owner, cannot sell it for a certain sum, report to his principal that the sale is for a less consideration, receive from him a conveyance of the property and pocket the difference between the amount reported and the sum actually received. In such a case the circumstance that the deed, at the request of the agent, was made to him, for motives of convenience, as was the fact in the transaction now before us, does not relieve the agent of responsibility; neither can he avoid liability by any other device which may be resorted to for the purpose of deceiving his principal. If the relation of agency exists between the owner of the land and the one selling it for him, the agent must account for every cent received.

We are well satisfied that, for the sale of the lands in question in this suit, defendants were the agents of plaintiffs. We will not undertake to state at length the reasons, based upon the evidence, which brings us to this conclusion. One or two leading facts may be mentioned. Defendants were land agents, and unquestionably employed by plaintiffs to pay taxes on the land. They, in response to an inquiry as to the value of the land, wrote plaintiffs, stating that it could be sold at $5 per acre, and soliciting the privilege of acting as their agents for the sale of the property. This was December 18, 1867. On the 30th of the same month, plaintiffs wrote, proposing to take $6 per acre, upon payments specified. On the 26th of February following, defendants wrote to plaintiffs in this language: "We have sold your section of land to some Germans, living about 150 miles from here, as directed by you, and herewith inclose a deed for you to execute to one Mr. Eollam. They paid us $180 down, but we thought it not best to make several deeds to them until they paid the balance of the first half of the money. We are not acquainted with the parties to whom we sold, but the amount we received is sufficient to cover all expenses and pay us both something for our trouble if they do not take the land." The letter further states that the payments for the land were to be partly on time, but the purchasers proposed to pay $5.50 per acre, cash, if plaintiffs would accept it. These letters undisputedly establish an agency. The conclusion, if possible, is strengthened by the fact that two, at least, of the statements in the last letter were false. They sold the land to *one* man, a German, and not to "some Germans." The purchaser had not proposed to make a discount on the price of the land for cash, but had bargained to pay all cash and, at the very time the last letter was written, the purchaser held a receipt from defendants, specifying the terms to be cash. The design of the request that the deed be made by plaintiffs to one of the defendants is easily discovered. The fact that it was made and complied with, furnishes no proof against the existence of the relation of principal and agent between plaintiffs and defendants.

There is not a shadow of evidence in conflict with this conclusion, except a letter written by plaintiff Oswald. It was written under these circumstances: Under the direction of defendants, the deed executed by plaintiffs was sent to defendants by express, the amount of the proceeds of the sale of the land to be collected on delivery of the deed. The collection demanded by the express company was $3,840, no allowance being made for defendants' commissions. Thereupon defendants wrote to plaintiffs as follows: "We have received your deed by American express, and in examining the collection we see you have allowed us nothing for commission. How is that? Did you expect us to sell your land for you at the price you directed and get nothing for selling it? We always get five per cent for selling lands, unless it is specified that it must be so much net to the owner.

This you did not do, and we presumed you intended to allow us commission. The money will all be paid. You can advise the express agent about our commission." To this letter plaintiff Oswald replied: "We received your letter, and in reply to it would say, that when we gave you the price of the land we supposed it was to yield us $6 per acre net; especially as you said nothing at all about any percentage in your letter. We sold you the land, made you the deeds, and expected to receive the full amount of money you promised to give us. We have, however, directed the express agent to allow you $40. If that will not satisfy you, we suppose the matter must be dropped for the present." This letter is not at all creditable to plaintiffs. They seek to avoid the payment of what, to them, must have appeared a just and proper compensation for the services of their agents by equivocation and positive mis-statements. They would be entitled to no sympathy if their foolish and false statements would operate as an estoppel against the claim they now make. But, in my opinion, it cannot be so considered. In this letter, after making these statements, they propose to pay $40 as commission to defendants, thus acknowledging the justice of the claim for compensation. On the other hand, defendants are, in my opinion, estopped to take advantage of plaintiffs' declarations by accepting the sum of $40, offered in this letter in response to a demand for compensation for their services as plaintiffs' agents. This act, it seems to me, closes defendants' mouths, and they cannot deny that they were plaintiffs' agents, or that they have not been paid for their services as such.

The majority of the court take a different view of the last point presented in the case, and arrive at a different conclusion as to the rights of the parties, and the remedy to which plaintiffs are entitled. They think that the object of this action is to set aside the previous arrangement of the parties as to receiving the sum of $3,800 in full for the land by the plaintiffs, and the payment of $40 to defendants in full for their compensation, and to make a new adjustment upon the basis of the relation of principal and agent. This, they think, should be done. They hold that the plaintiffs are entitled to the full amount for which the land was sold, and must allow to defendants their commissions. The evidence fails to show what amount ought to be allowed defendants for commissions. The cause will be remanded for the district court to ascertain the just amount of commissions to be allowed defendants, and a decree will be entered thereon for the sum received by defendants for the land, less the amount paid plaintiffs and such commissions. The costs of this court will be paid by plaintiffs.

Modified and affirmed.